## Voils v. Commonwealth.

(Decided March 23, 1920.)

### Appeal from Russell Circuit Court.

1. Intoxicating Liquors—Transportation.—Kentucky Statutes, section 2569a, subsection 1 (vol. 3, ed. 1918), making it a punishable offense for a carrier, corporation or person to bring, transfer or deliver spirituous, vinous or malt liquors into any county, city, town or district where its sale is prohibited by law, does not apply to the owner or operator of an automobile, or other vehicle, who, for or without hire, transports therein and into such territory a passenger or passengers lawfully owning and having in his or their sole custody and control such liquors for personal use.

2. Intoxicating Liquors—Transportation.—To render the act of the carrier, corporation or person in carrying spirituous, vinous or malt liquors into the prohibited territory unlawful in the meaning of the statute, supra, it must be carried for another by means of such carrier's, corporation's or person's sole custody thereof as the agent of the seller, owner, consignee or distributee, until its delivery in such territory.

LILBURN PHELPS for appellant.

CHARLES I. DAWSON, Attorney General, CHARLES H. MORRIS, ex-Attorney General, and O. S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Theodore Voils, was tried and convicted in the Russell circuit court under an indictment returned February 20, 1919, charging him with a violation of the provisions of chapter 6, section 1, acts 1918, approved March 15, 1918 (now subsection 1, section 2569a, Kentucky Statutes, vol. 3, edition 1918), committed by "unlawfully bringing for Elmer Eastman spirituous, vinous and malt liquors into Russell county where the local option law was in force;" the punishment imposed by the verdict of the jury and judgment of the court being a fine of $60.00, and imprisonment of ten days in jail. He was refused a new trial and has appealed.

The evidence introduced for the Commonwealth was furnished by three witnesses. None was heard for the appellant. At the conclusion of the evidence appellant requested the trial court to peremptorily instruct the jury to return a verdict of acquittal, but the instruction was refused and others given which submitted to the decision of the jury the question of appellant's guilt or innocence. To the ruling of the court, both in refusing the peremptory instruction and the giving of those under which the case was submitted to the jury, appellant at the time objected and excepted. These rulings constituted the grounds mainly relied on for the new trial moved for by appellant in the court below, and the same are now urged by him for the reversal of the judgment asked of this court. The statute under which appellant's conviction was obtained reads as follows:

"That it shall be unlawful for any person or persons, individual or corporation, public or private carrier to

bring into, transfer to other person or persons, corporation, carrier or agent, deliver or distribute in any county, district, precinct, town or city where the sale of intoxicating liquors has been prohibited, or may be prohibited, whether by special act of the general assembly, or by vote of the people under the local option law, any spirituous, vinous, malt or other intoxicating liquors, regardless of the name by which it may be called; and this act shall apply to all packages of such intoxicating liquors, whether broken or unbroken. Each package of such intoxicating liquor so brought, transferred or delivered in such territory shall constitute a separate offense.''

The question here presented for decision is, whether the statute, *supra,* applies to a case resting upon such facts as were held sufficient to authorize the appellant's conviction under the indictment. The question has not been passed on by this court. There was an attempt to have it decided in Barber v. Commonwealth, 182 Ky. 242, upon an agreed statement of facts which the circuit court had held sufficient to authorize the conviction of the defendant under the statute, but on the appeal of the latter we held the decision of the question unnecessary, and refused to pass on it, for the reasons stated in the following excerpt from the opinion:

"The only question we deem it necessary to decide is whether the agreed facts make out a case under the statute. According to the agreed statement of facts, the defendant merely transported the two passengers to Lexington, 'knowing' at the time that each of said parties were going for the purpose of purchasing spirituous, vinous and malt liquors, as set out in the indictment, and that they were each to return in the automobile such liquors as they bought in Lexington, Ky., to Morehead, in Rowan county, Ky.' In other words, it does not appear that the passengers ever returned in the automobile with the whiskey to Rowan county or that defendant ever carried the whiskey into Rowan county, prior to the finding of the indictment. Indeed, for aught that appears in the agreed statement of facts, both the passengers and the whiskey may still be in Lexington. That being true, the facts were insufficient to show the guilt of the defendant, even if the statute applies to a case like this—a question which we deem it unnecessary to

decide. Hence the defendant should have been acquitted.''

Substantially the following facts appear from the bill of evidence: In February, 1919, the three witnesses for the Commonwealth, Eastham, Chrisman and Dunbar, all residents of Russell county, where the local option law was in force, desiring to procure for their own use some whiskey arranged to go together to Lebanon, Kentucky, where its sale was then permitted by law, and there purchase it. They employed appellant, who with his father, John W. Voils, then owned a garage in Jamestown and operated, for hire, automobiles, to convey them in an automobile from that town to Lebanon and back, altogether about 120 miles, at the agreed and customary price of $20.00, for the round trip. Appellant and his father did not regularly operate an automobile line between Jamestown and Lebanon, but would, when necessary for the accommodation of passengers, transport them in an automobile from one of these towns to the other for hire, invariably charging for such trips $20.00, regardless of the number of passengers.

The contract for the hiring of the car was made by Eastham with John W. Voils, and although the former admitted he may have told the latter that he and his companions wished to go to Lebanon because they wanted some whiskey, he did not indicate whether the quantity desired was only what they could drink while in Lebanon or more, and nothing was said about bringing back whiskey or other liquors in the automobile. The proof fails to show that this conversation was reported to appellant, or that he otherwise received, before starting for Lebanon with Eastham and his companions as automobile passengers, information that they were making the trip to purchase whiskey. Somewhere on the way, however, and before reaching Lebanon appellant's passengers talked of their purpose of getting liquor there, but without mentioning the quantity or that they expected to carry it back to Jamestown in the automobile. When the party got to Lebanon appellant let the three passengers out at a saloon where they obtained one or more drinks of whiskey each; but he ran his automobile to a garage to obtain gasoline and later rejoined them at a restaurant where the entire party took lunch. Either on their first visit to the saloon or a second one, made after they had lunched, Eastham,

Chrisman and Dunbar made their purchases of the whiskey which they carried back to Russell county with them; Eastham obtaining a case, or twelve quarts, and Chrisman and Dunbar two to four quarts each. The whiskey of Eastham was contained in a square box; that of Chrisman and Dunbar was inclosed in separate single bottle packing, and the whole placed by the purchasers in the automobile, shortly before the departure of the party on the return to Jamestown.

It was admitted by the Commonwealth's witnesses that appellant neither charged them nor was paid anything for transporting the whiskey; and there was an absence of evidence tending to show that he was even present when the whiskey was purchased or placed in the car, or that he was informed of its presence in the car when the party left Lebanon; but if he did not then know of its presence in the car, he must have learned it soon after leaving Lebanon, as it was in the custody of the respective owners who apparently made no attempt to conceal it. Moreover, Eastham and Chrisman had each provided himself at Lebanon with a pint of appricot brandy, in addition to the whiskey purchased, from which the party, including appellant, occasionally drank in returning to Jamestown. There was also a total absence of evidence conducing to prove that the whiskey was obtained by the purchasers for sale in Russell county, the dry territory, or elsewhere, or that any of it was sold by them. On the contrary the evidence showed that it was procured by the purchasers for their own personal use and that upon reaching Jamestown each owner of the whiskey carried to his own home the quantity he purchased at Lebanon.

The question we are called upon to decide is not affected by the amendments to the Federal Constitution or that of Kentucky, relating to the prohibition of the liquor traffic, nor by any legislative enactment, national or state, passed to carry them into effect; for the offense of which appellant was convicted, if an offense at all, was committed before the adoption of either of those amendments, and against a statute then and yet in force. Its decision must therefore be controlled by the language of the statute itself.

We are unable to see that the facts upon which the Commonwealth procured the appellant's conviction in the trial court, constitute an offense under the statute

charged to have been violated.  The manifest object of its enactment was to make unlawful the bringing by a carrier or individual, whether for or without compensation, of spirituous, vinous or malt liquors into any territory, where its sale is prohibited by law, for delivery or distribution therein to any person or persons, regardless of the use to which it may be put.  But to render the act of the carrier or individual in taking liquor for another into prohibited territory unlawful in the meaning of the statute, *supra*, it must be done by means of its or his sole custody thereof, until its delivery to the owner, consignee or distributee in the prohibited territory.

The offense denounced by the statute cannot be committed by the act of the carrier in transporting into the territory where the sale of spirituous, vinous and malt liquors is prohibited by law, a passenger or passengers owning and having in his or their custody such liquors, exclusively for personal use, even though such carrier in contracting to convey them knew that they had in their possession such liquors and intended to carry them with them in the automobile provided for conveying them as passengers into the dry territory.  We offer no criticism of the statute nor of the salutary effect it was intended to have in destroying the unlawful business of the bootlegger; but looking to its language alone, we fail to find any provision that can be invoked to prevent a person, owning and having in his possession by lawful means spirituous, vinous or malt liquors, solely for personal use in his own home, from carrying it in his custody by public or private conveyance to his home, or that would prevent the owner of such conveyance from carrying him as a passenger to that home, accompanied by the whiskey lawfully in his possession; although the home may happen to be located in a county where the sale of such liquors is prohibited by law. It would be an anomalous situation, indeed, if we should find it necessary to declare that although Eastham and his companions were lawfully in possession of the whiskey they purchased at Lebanon, and well within their rights under the statute, *supra*, in having themselves and their whiskey carried by appellant to their homes, the latter, notwithstanding the lawfulness of their acts, was properly punished in the court below because of the assistance he rendered them.

In Commonwealth v. Campbell, 133 Ky. 51, the opinion, after setting forth the police power of the state under the several provisions of its Constitution regulating the sale of liquors therein, among other things declared:

"Therefore the question of what a man will drink or eat, or own, provided the rights of others are not invaded, is one which addresses itself alone to the will of the citizen. It is not within the competency of the government to invade the privacy of a citizen's life and to regulate his conduct in matters in which he alone is concerned, or to prohibit him any liberty the exercise of which will not directly injure society. . . . The history of our state from its beginning shows that there was never even the claim of a right on the part of the legislature to interfere with the citizen using liquor for his own comfort, provided that he committed no offense against public decency; and we are of opinion that it never has been within the competency of the legislature to so restrict the liberty of the citizen and certainly not since the adoption of the present Constitution."

In Commonwealth v. Smith, 163 Ky. 227, the doctrine announced in Commonwealth v. Campbell, supra, was approved, the court saying:

"There must of necessity be limits beyond which the legislature cannot rightfully go. We think that limit is reached when it prohibits such possession (of liquors) for sale or other unlawful purpose. It cannot go further and prohibit such possession or limit the place of possession where the liquors are intended for one's own use, and, therefore, for a purpose with which the police power of the state is not concerned. It will not do to say that because some persons may evade the law as it now exists, others who have no intention of violating the law should be denied their constitutional rights."

. Hence, for the reasons thus indicated, section 4, chapter 7 of an act of the general assembly, 1914, was declared unconstitutional, in so far as it provided that "it should be unlawful for any person to keep, store, or possess spirituous, vinous or malt liquors in any room, building, or structure other than the private residence of such person," etc., in territory where local option was in force. If the conviction of appellant was authorized under the statute, a railroad company would incur the punishment it prescribes every time it transported on

one of its trains, into dry territory, a passenger having spirituous, vinous or malt liquor in his possession for his personal use.

As under the authorities, *supra,* Eastham and his companions who purchased the whiskey and by reason of their possession of it and relation to appellant and his automobile as passengers, controlled its tranportation into the prohibited territory, were not amenable to the punishment prescribed by the statute in question, *a fortiori* should appellant have been excused for the part he took in the transaction. It is, therefore, our conclusion that the provisions of the statute were not violated by him. For the reasons indicated the judgment is reversed and cause remanded with direction to grant him a new trial, and, if the evidence is the same, to peremptorily instruct the jury on such trial to acquit him. The whole court sitting.